UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT WILLIAMS,
Plaintiff,

-v-

CLASSIC SECURITY and S.L. GREEN REALTY,
Defendants.

18-CV-1691 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Robert Williams initiated this employment-discrimination action against Defendants Classic Security and S.L. Green Realty ("S.L. Green") after they terminated him from his employment in or around February 2016. Proceeding *pro se*, Williams alleges that he was fired because of his age and his race, and he brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981 ("Section 1981"); the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq*. Defendant Classic Security now moves to dismiss Williams's operative Amended Complaint. (Dkt. No. 26.) For the reasons that follow, the motion is granted.

## I. Background

The following facts, which are presumed true for purposes of this motion, are drawn from Williams's Amended Complaint. (Dkt. No. 7 ("AC").)

Plaintiff Robert Williams is an African American male who is over 40 years of age and who resides in the Bronx. (AC ¶¶ 3, 8.[1]) Williams was formerly employed as a "Security Officer" by Defendants Classic Security and S.L. Green at two of S.L. Green's Manhattan locations. (AC ¶¶ 8–10.) Williams began working for Defendants on or around January 2, 2016. (AC ¶ 10.)

"The series of unlawful conduct" giving rise to Williams's claims began approximately three weeks into his employment with Defendants, when Williams went to pick up his weekly paycheck. (AC ¶ 22.) Upon attempting to do so, Williams learned that his paycheck for the prior week's work had not yet been printed. (AC ¶ 23.) Williams was displeased upon learning this, and he sought permission to speak with someone in the pay department to express his concerns. (AC ¶¶ 24–25.) The "Scheduling Supervisor" Williams ultimately spoke to — identified in the Amended Complaint as "Jerimiah" — informed Williams that his paycheck would be available for retrieval the following day. (AC ¶ 25.) Williams returned to retrieve his paycheck promptly the next morning, at 8:00 a.m., which is "the time allowed for employees [of Defendants] to pick up their checks." (AC ¶ 26.) Williams then learned for the first time that his check would in fact not be available until later that same day, at 3:00 p.m. (AC ¶¶ 26–27.) Williams asked his employers to explain why he could not have been advised the prior day that his check would not be available until 3:00 p.m. (AC ¶ 27.) Williams alleges that Defendant Classic Security treated him unprofessionally throughout their ensuing conversation about this delay. (AC ¶ 28.) Upon retrieving his check later that day, sometime between 3:00 p.m. and

---

[1] Williams's Amended Complaint begins with paragraph numbers 1 through 11 under the "Nature of Action(s)" heading (*see* AC at 1–3), and then restarts with paragraph number 1 under the "Jurisdiction and Venue" heading (*see* AC at 3). Unless indicated otherwise, the paragraph numbers of the Amended Complaint cited herein refer to the numbered paragraphs that begin on page 3 of the Amended Complaint under the "Jurisdiction and Venue" heading.

5:00 p.m., Williams again spoke with Jerimiah about this delay, and Williams explained to Jerimiah that this was "wrong and if this ever happen[ed] again, [Williams would] . . . make a complaint with the Department of Labor." (AC ¶ 31.) Williams alleges that this warning to Jerimiah, namely that Williams was prepared to pursue legal action in furtherance of his right to timely payment, was a protected activity. (AC ¶ 35.) Williams also alleges that following this series of events, Defendants began subjecting him to race, age, and retaliatory discrimination. (AC ¶ 40.)

The other incident giving rise to Williams's claims — and the incident that ultimately led to Williams's firing — involved a shift change that occurred in mid-February 2016. (*See* AC ¶ 45.) Williams generally worked the midnight to 8:00 a.m. overnight shift for Defendants, from Monday through Friday. (AC ¶ 43.) Typically, Defendants' Security Officers would be relieved from their shifts approximately fifteen minutes prior to their shift's end time, *i.e.*, at 7:45 a.m. for the overnight shift. (AC ¶ 44.) However, toward the end of Williams's overnight February 15, 2016, shift, at around 7:30 a.m., Williams realized that his relief would not be arriving on time. (AC ¶ 54.) Williams, dissatisfied with being forced to work late and aware that he was expected to work a double shift later that same day, instead resolved to clock out early, at around 7:30 a.m. or 7:35 a.m. (AC ¶ 54.) After Williams had changed into his civilian clothes and as he attempted to exit the S.L. Green building, a Fire Safety Director at the scene restricted Williams's ability to leave, noting that Williams's relief had not yet arrived. (AC ¶¶ 55–56.) Williams alleges that this Fire Safety Director then threatened to write Williams up for leaving early, despite this Fire Safety Director's lack of authority to so discipline Williams. (AC ¶¶ 57–58.) The Fire Safety Director eventually did file a complaint with Classic Security regarding Williams's early departure from his shift, and, according to Williams, Classic Security gave the

complaint undue credence due to Williams's relative lack of seniority with the firm. (AC ¶¶ 61–62.) Williams also alleges that "other similarly employees [sic] of other races, gender, and under the age of 40 are not reprimanded when its [sic] time for them to go home[, w]hether one has a relief or not." (AC ¶ 60.)

Despite this incident, Williams dutifully performed his previously scheduled double shift the next afternoon and morning. (AC ¶ 65.) However, following the end of this double shift, Williams's direct supervisor told Williams that Jerimiah had taken Williams off of the shift schedule. (AC ¶ 66.) According to Williams, Jerimiah acted outside of the scope of his authority with Classic Security when he removed Williams from his shifts. (AC ¶ 68–70.) Williams was sometime soon thereafter terminated from his employment with Defendants, and Williams contends that he has yet to receive a non-pretextual basis for his termination. (AC ¶¶ 76, 79.) Instead, Williams alleges that the basis for his termination was "unlawful discrimination and retaliation." (AC ¶¶ 77, 79.)

Williams initiated this lawsuit on February 23, 2018, by filing a complaint naming Classic Security and S.L. Green as defendants. (Dkt. No. 2.) Williams amended his complaint on August 3, 2018. (Dkt. No. 7.) After Classic Security was served with the operative Amended Complaint on September 11, 2018 (Dkt. No. 18), Classic Security filed a motion to dismiss the Amended Complaint (Dkt. No. 26). That motion is now fully briefed (Dkt. Nos. 27, 38–39) and is ripe for resolution.

## II. Legal Standards

To survive a motion to dismiss for failure to state a claim, a pleading "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff pleads facts that would allow "the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The Court must accept as true all well-pleaded factual allegations in the complaint, and draw [ ] all inferences in the plaintiff's favor." *Goonan v. Fed. Reserve Bank of New York*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) (alteration in original) (internal quotation marks omitted).

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). This duty is especially pressing "when the *pro se* plaintiff alleges that her civil rights have been violated," *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), because the purpose of affording liberal construction to *pro se* filings is fundamentally to protect "*pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training," *Triestman*, 470 F.3d at 475 (internal quotation marks omitted). That said, "even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). This is because "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman*, 470 F.3d at 477 (quotation marks and citation omitted).

## III. Discussion

### A. Federal Claims

Williams brings claims against Defendants pursuant to Title VII, the ADEA, and Section 1981. (AC ¶¶ 84–112.) All of Williams's federal employment-discrimination claims are subject to the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See id.* at 802 (addressing Title VII claims); *DiGirolamo v. MetLife Grp., Inc.*, 494 F.

App'x 120, 122 (2d Cir. 2012) (summary order) (applying the standard to ADEA claims); *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (applying the standard to Section 1981 claims). Under this framework, "the plaintiff bears the initial burden of establishing a prima facie case of discrimination."[2] *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). Once a plaintiff has successfully carried this burden, "the burden shifts to the defendant to articulate 'some legitimate, nondiscriminatory reason' for [the challenged employment] action." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant is able to do so, then "the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's [action] was in fact the result of discrimination." *Id.*

With respect to the interplay between the *McDonnell Douglas* framework and the *Twombly*/*Iqbal* plausibility standard governing Rule 12(b)(6) motions, the Second Circuit has explained that "*Iqbal*'s requirement applies to Title VII complaints of employment discrimination, but does not affect the benefit to plaintiffs pronounced in the *McDonnell Douglas* quartet." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). This means that just as "the *McDonnell Douglas* temporary presumption reduces the facts a plaintiff would need to *show* to defeat a motion for summary judgment" at the first stage of the framework, so too does the "presumption . . . reduce[] the facts needed to be *pleaded* under *Iqbal*." *Id.* In other words,

---

[2] Establishing such a *prima facie* case in the Title VII context requires the plaintiff to make a showing that she (1) belongs to a protected class; (2) was qualified for the job at issue; (3) suffered adverse employment action; and (4) there is minimal support for the proposition that the adverse action was motivated by discriminatory intent. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). A similar showing is required in the ADEA context, *see Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000), except that the Supreme Court has held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action," rather than merely a motivating or contributing factor for that action, in order for the burden to "shift to the employer to show that it would have taken the action regardless of age." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).

to survive a Rule 12(b)(6) motion in the Title VII context, the facts "alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination," but instead "need only give plausible support to a minimal inference of discriminatory motivation." *Id.* The Second Circuit's "decision in *Littlejohn* makes clear that a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss. Rather, . . . a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 311). This pleading standard is also applied to claims brought under Section 1981 and the ADEA. *See, e.g.*, *id.*; *Khanna v. MUFG Union Bank, N.A.*, No. 18 Civ. 3031, 2019 WL 1428435, at *4 (S.D.N.Y. Mar. 29, 2019), *appeal filed*, No. 19-893 (2d Cir. Apr. 8, 2019); *Martin v. City Univ. of N.Y.*, No. 17 Civ. 6791, 2018 WL 6510805, at *7 (S.D.N.Y. Dec. 11, 2018).

With these principles in mind, the Court turns to an examination of the sufficiency of Williams's pleading with respect to each federal claim his complaint can fairly be construed to have alleged.

**1. Race Discrimination**

Williams pleads racial discrimination in employment under two separate federal statutes: Title VII and Section 1981. Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 guarantees to all persons within the United States "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). At the pleading stage "in an employment

discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 86. This pleading standard governs Williams's race-based discrimination claims under both Title VII and Section 1981. *See, e.g.*, *Johnson v. Andy Frain Servs. Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016) (summary order); *Khanna*, 2019 WL 1428435, at *4.

Williams's Section 1981 and Title VII claims fail at the second step of this test, because the Amended Complaint does not include facts sufficient to support the inference that racial discrimination was a motivating factor behind Williams's termination. While Williams in his complaint recites the pleading standards for race discrimination (AC at 3, ¶¶ 7–9), he pleads no facts sufficient to support the inference that his termination "occurred under the circumstances giving rise to an inference of discrimination" (AC at 3, ¶ 9). Indeed, throughout his Amended Complaint, Williams repetitively pleads in a conclusory manner and without any supporting facts that he "was subject to adverse actions by Classic [Security] and [S.L. Green] under race . . . [discrimination]" (AC ¶ 40) and that "other similarly [situated] employees of other races . . . [were] not reprimanded when its [sic] time for them to go home" (AC ¶ 60). But in assessing the sufficiency of Williams's pleading for purposes of Classic Security's Rule 12(b)(6) motion, this Court is required to strike conclusory assertions such as these, *see Iqbal*, 556 U.S. at 678, and to instead assess whether the *facts* Williams has pleaded provide "at least minimal support for the proposition that [his] employer was motivated by discriminatory intent," *Littlejohn*, 795 F.3d at 311.

Having carefully reviewed Williams's pleading and supporting briefing for such supporting facts, the Court finds none. Williams does not, for example, allege that his employers

ever expressed any racial animus in their comments or statements to him, *cf. Martin*, 2018 WL 6510805, at *8–11 (dismissing Title VII claim where plaintiff *had* alleged racist statements by his employers because they were mere "stray comments"), nor does Williams provide any factual details regarding his allegation that other similarly situated employees of different races were treated differently than he was, *cf. Hernandez v. City of New York*, No. 11 Civ. 3521, 2013 WL 593450, at *5 (E.D.N.Y. Feb. 13, 2013) (dismissing Section 1981 claim because "Plaintiff has alleged . . . that the Defendants treated similarly-situated non-Hispanic individuals more favorably than they treated Plaintiff" but "Plaintiff provides examples with little details about . . . the comparators"). As these and other cases show, *see also, e.g.*, *Khanna*, 2019 WL 1428435, at *4, courts in this Circuit will dismiss race-based employment discrimination suits at the Rule 12(b)(6) stage even where a plaintiff pleads *some* facts relevant to showing discriminatory intent if those facts are too attenuated from the alleged adverse employment action. The key question is whether the plaintiff pleads facts sufficient to render plausible the minimal "motivating factor" inference needed to survive a Rule 12(b)(6) motion. Here, Williams pleads no facts at all in support of such an inference, and dismissal is thus warranted. This conclusion is particularly justified given that the only specific cause for his termination Williams *has* expressly alleged with supporting facts is his leaving one of his shifts early and without permission when he was still a relatively new employee. (AC at 3 ¶ 6 & ¶¶ 54, 62.)

In sum, Williams needs to allege *facts* that would permit the inference that racial discrimination motivated or contributed to his firing in order to survive a Rule 12(b)(6) motion to dismiss. Williams's failure to allege any such facts warrants the dismissal of his Title VII and Section 1981 race-based termination claims.

**2. Age Discrimination**

Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The statute protects those who are more than 40 years old. *Id.* § 631(a). For his ADEA claim to survive Classic Security's Rule 12(b)(6) motion, Williams must have plausibly alleged that adverse action was taken against him by his employer, and that his age was the "but-for" cause of the adverse action. *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 32 (2d Cir. 2016) (summary order).

Williams's ADEA claim fails for the same reason his race-based termination claims fail: Williams pleads no facts to support the inference that his age in any way contributed to, let alone constituted a "but for" cause of, his termination. Williams's conclusory allegation that "other similarly [situated] employees . . . under the age of 40 are not reprimanded when its [sic] time for them to go home" (AC ¶ 60) is insufficient to satisfy his burden, at least absent additional facts regarding "dates, ages, or reasons with respect to the termination [or reprimanding] of other employees," *Marcus*, 661 F. App'x at 32. Williams's "skeletal pleading provides no more than 'naked assertions devoid of further factual enhancement' and does not allow the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

In his brief in opposition to Classic Security's motion, Williams asserts that "he was replaced by a younger person" upon his termination. (Dkt. No. 38 at 6.) This fact is properly considered by the Court in connection with Classic Security' motion by virtue of Williams's *pro se* status. *See Wagnoon*, 2003 WL 22384770, at *1. Even doing so, however, does not save Williams's ADEA claims, because, "[w]ithout more, the mere fact that an older employee was

replaced by a younger one does not plausibly indicate discriminatory motive." *Marcus*, 661 F. App'x at 32. This is because "[a] plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself," *Johnson*, 638 F. App'x at 70 (alteration in original) (quoting *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)), but Williams's amended complaint does not describe the age or qualifications of his alleged replacement, nor does it provide any other "facts that would create a plausible inference of [age] discrimination," *id.* at 71. Again, to survive Classic Security's motion, Williams must plead *facts* showing that his age, rather than, say, his decision to leave his shift early and without relief, caused his termination. As Williams has not pleaded any such facts, his ADEA claim is dismissed.

**3. Retaliation**

"Retaliation claims under Title VII and [Section] 1981 are both analyzed pursuant to Title VII principles and the *McDonnell Douglas* burden-shifting evidentiary framework." *Littlejohn*, 795 F.3d at 315 (footnote omitted). ADEA retaliation claims are also governed by the *McDonnell Douglas* framework. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). "[F]or a retaliation claim to survive a . . . motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (alteration in original) (quoting *Vega*, 801 F.3d at 90). With respect to the causation element, the Second Circuit has required that a "plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action. . . . 'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* (omission in original) (quoting *Vega*, 801 F.3d at 90–91). "Causation may be

shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Id.*

Williams's retaliation claims fail because Williams has failed to adequately plead that he engaged in a protected activity and that this protected activity was a "but-for" cause of his termination. To have engaged in a protected activity under Title VII, Williams must have had a "good faith, reasonable belief that []he was opposing an employment practice made unlawful by Title VII." *Khanna*, 2019 WL 1428435, at *5 (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 286 (2d Cir. 2001)). Williams does not allege that he ever took action in opposition to the race-based or age-based discriminatory conduct alleged in his complaint. Thus, the facts that Williams *does* allege provide no basis for inferring that Williams was "opposing" a Title VII or ADEA violation as of the time of his termination. Moreover, the absence of any factual allegations supporting Williams's characterizations of Defendants' conduct as discriminatory defeats the plausibility of the notion that Williams's opposition to that conduct would have been reasonable. *See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (affirming dismissal of Title VII retaliation claim because "there was no basis for a rational finding that [plaintiff's] belief that she was being discriminated against because she was a woman—even if genuine—was reasonable"). To the contrary, the only rational conclusion to be drawn from the facts in the Amended Complaint with respect to the cause of Williams's termination is the same conclusion Williams himself alleges in his Amended Complaint: that he was terminated "because [he] was simply a new employee in comparison to the decision[]makers involved" (AC at 2 ¶ 6), a new employee who had left a shift as a security guard without either relief or permission (*See* AC ¶¶ 54–56). Because Williams has not plausibly alleged that his

having engaged in a protected activity was a "but-for" cause of his termination, he fails to state a federal retaliation claim.

Finally, the Court briefly addresses Williams's allegations that his complaints to Jerimiah regarding Defendants' failure to remit his weekly paycheck in a timely manner were protected activities related to Defendants' violations of the New York Labor Law. (AC ¶¶ 35, 37, 39.) "[B]ecause [Williams's] factual allegations suggest[] claims under the" New York Labor Law Section 215, this Court will "construe [his] complaint as asserting claims under [that] law[], even if []he failed to" expressly plead such a claim. *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017). The Court addresses its disposition of this claim below. *See infra* Section III.B.

**4. Hostile Work Environment**

"To establish a hostile work environment under Title VII [or Section] 1981[,] . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Hostile work environment claims brought under the ADEA are subject to the same standard. *See Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 41 (2d Cir. 2019). Although Williams does not expressly plead a hostile work environment claim, the Court construes his *pro se* pleading to have asserted such a cause of action for purposes of assessing Classic Security's motion to dismiss.

As with his age and race-based discrimination claims, Williams has failed to allege facts sufficient to support a hostile work environment claim. As indicated, Williams has not alleged any discriminatory conduct on the part of Defendants, let alone severe or pervasive conduct. Williams makes no mention of discriminatory comments or conduct directed at him due to his

race or age. He makes no claims of abuse, and any incidents of hostility occurred in circumstances involving workplace misconduct and in no way concerned Williams's age and race. The Amended Complaint fails to point to threatening or humiliating conduct motivated by Williams's status as an African American man over the age of 40. Thus, he has failed to state a hostile work environment claim.

**B. State and City Law Claims**

Because all of Williams's federal claims have been dismissed, this Court must determine whether to exercise supplemental jurisdiction over any remaining city- and state-law claims, including those NYSHRL and NYCHRL claims Williams has expressly alleged (*see* AC ¶¶ 113–20) and the New York Labor Law claim his complaint may be fairly construed to have alleged, *see supra* Section III.A.3. When a district court has original jurisdiction over certain claims in an action, and additional claims "form part of the same case or controversy," the court has supplemental jurisdiction over the additional claims. 28 U.S.C. § 1367(a). However, a court "may decline to exercise supplemental jurisdiction over" the additional claims on various grounds, including that "the district court has dismissed all claims over which it has original jurisdiction." *Id*. § 1367(c)(3); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). Here, because all of Williams's federal claims have been dismissed at an early stage of this litigation, the Court declines in its discretion to exercise

supplemental jurisdiction over his remaining city- and state-law claims. Accordingly, all of Williams's remaining claims are dismissed.[3]

## IV. Conclusion

For the foregoing reasons, Defendant Classic Security's motion to dismiss is GRANTED, and Plaintiff's Amended Complaint is DISMISSED.

Plaintiff is granted leave to replead, provided that he can do so in a manner consistent with this opinion. Any amended complaint shall be filed on or before October 18, 2019. If Plaintiff decides not to replead but wishes to file an appeal from this opinion and order, he shall file a letter to that effect no later than October 18, 2019, in which event the Court will enter final judgment.

The Clerk of Court is directed to close the motions at Docket Number 26.

SO ORDERED.

Dated: September 18, 2019
New York, New York

J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*

---

[3] With respect to the New York Labor Law Section 215 retaliation claim not expressly pleaded by Williams, *see supra* Section III.A.3, the Court is mindful that while "a district court may decline to exercise supplemental jurisdiction over state and local law claims" in circumstances such as this, the recognition of Williams's pleading of this New York Labor Law claim remains important, because a "district court's recognition that a complaint asserts state and local law claims can affect a pro se litigant's rights because doing so preserves the timeliness of such claims and permits those claims to be later brought in state court." *McLeod*, 864 F.3d at 158 n.6 (citation omitted).